IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK WALLS | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MILLER EDGE, INC., | : | No. 22-3596 |
| JOHN CAGGIANO, and | : | |
| TIMOTHY CASTELLO, | : | |
| | : | |
|     Defendants. | | |

OPINION MEMORANDUM

**Perez, J.**                                                                                           **April 26, 2024**

Plaintiff, Mark Walls, brings this employment discrimination action against Defendant Miller Edge, Inc. ("Miller Edge") and current or former Miller Edge employees Timothy Castello and John Caggiano, under the Family and Medical Leave Act ("FMLA"), 29 U.S.C §§ 2611 et seq. This case arises out of Plaintiff's claim that Miller Edge interfered with his rights under the FMLA and retaliated against him for exercising those same rights. Presently before the Court is Defendant's Motion to Dismiss. Having reviewed Plaintiff's Response in Opposition and Defendant's Reply thereto, and for the reasons set forth below, Defendant's motion is **GRANTED** in part and **DENIED** in part.

I.     BACKGROUND

Viewing the evidence in a light most favorable to Plaintiff, the relevant facts are as follows. Plaintiff has been employed by Defendant since 2008 and was a Miller Edge employee at the time of the filing of this lawsuit. It is undisputed that Plaintiff qualified as an eligible employee under the FMLA and was entitled to FMLA leave for the serious health condition of avascular necrosis. Plaintiff's health condition required both continuous medical treatment and inpatient care at a hospital. Defendant was an employer subject to the FMLA's requirements. At the time of the

1

events relevant to this case, Defendant John Caggiano was Director of Manufacturing & Supply Chain at Miller Edge and Defendant Timothy Castello was Vice President of Manufacturing and Product Development.[1]

On April 22, 2019, Plaintiff gave notice to Defendant in advance of his medical leave, through his supervisor, as well as through his spouse, who was also employed by Miller Edge in the Human Resources department ("HR").[2] Defendant granted Plaintiff's request for leave. While on leave, Plaintiff asked to return on August 29, 2019, requesting that Defendant approve him for light duty accommodations as necessitated by his serious health condition. In his request, Plaintiff reminded Miller Edge's Controller and HR Manager that the company had previously made such accommodations for other employees. At the time of Plaintiff's request, Defendant had employees working with light duty accommodations. Plaintiff presented the company with solutions to allow him to work with restrictions, such as performing manual lifting with a forklift.[3] Nevertheless, Miller Edge denied the request.[4] Furthermore, while the Complaint is not clear as to the precise steps taken by Plaintiff's spouse, Plaintiff also alleges that his wife attempted to facilitate his return in her role in HR but was likewise denied.[5] As a result of Defendant's denial, Plaintiff remained on FMLA leave for several additional days. Plaintiff returned to work on September 4, 2019 without any of his requested light duty accommodations.[6]

Upon his return to work, Plaintiff's medical condition persisted, requiring him to take leave again. Despite Defendant's previous denial, Defendant accommodated Plaintiff's two subsequent FMLA requests, approving medical leave and returning Plaintiff to work with his

---

[1] ECF No. 1 at ¶ 2.
[2] *Id.* at ¶ 10.
[3] *Id.* at ¶ 14.
[4] *Id.* at ¶ 11, 14.
[5] *Id.* at ¶ 13.
[6] *Id.* at ¶ 11, 14.

proposed light duty accommodations. Plaintiff suggests that Miller Edge approved these later requests because of a change in management involving Defendant Caggiano.[7] Plaintiff avers that Caggiano continued to interfere with his return to work, fabricating performance and dishonesty allegations against him which were later disproven by Defendant and the HR Manager.

On September 25, 2019, at Caggiano's direction, Plaintiff's supervisor initiated disciplinary corrective action against Plaintiff for dishonesty involving an inventory item.[8] Plaintiff complained internally about his treatment by Caggiano to HR, the Controller, and other management personnel.[9] On January 16, 2020, Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"). EEOC issued Plaintiff a Right to Sue Letter on or about August 14, 2020.[10]

Defendants' hostility and antagonism towards Plaintiff escalated after he filed his EEOC complaint.[11] In the fall of 2020, Caggiano again falsely accused Plaintiff of improper inventory counts after certain items went missing even though Plaintiff was able to establish delivery of the supposedly missing items to the intended recipient. These allegations were later disproven.[12] Importantly, prior to his FMLA leave, Plaintiff never experienced allegations of dishonesty or poor performance.[13] On January 8, 2021, Plaintiff's wife was demoted and given a pay cut following her complaints about Plaintiff's treatment. On January 15, 2021, Miller Edge terminated Plaintiff's wife's employment.[14]

---

[7] *Id.* at ¶ 22.
[8] *Id.* at ¶ 17.
[9] *Id.* at ¶ 16, 28.
[10] *Id.* at ¶ 20.
[11] *Id.* at ¶ 21.
[12] *Id.* at ¶ 18.
[13] *Id.* at ¶ 19.
[14] *Id.* at ¶ 23.

Plaintiff's individual claim against Caggiano arises from his role in the denial of light duty accommodations and in the allegedly groundless disciplinary actions that followed Plaintiff's FMLA leave.[15] Plaintiff's individual claim against Castello involves Castello's knowledge of Caggiano's treatment of Plaintiff and his overruling objections made by Plaintiff's wife and Miller Edge's Controller on his behalf.[16] Plaintiff filed the instant complaint on September 9, 2022. Defendants filed a motion to dismiss all claims on January 31, 2023.

## II.     STANDARD OF REVIEW

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and does not require "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2006). In deciding a 12(b)(6) motion to dismiss, the court must accept all facts as true in the light most favorable to the plaintiff and determine whether such facts establish a plausible claim for relief. *See Twombly*; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009); *Phillips v. Alleghany*, 515 F.3d 224 (3d Cir. 2008). The Third Circuit requires application of a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;' " (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;' " and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

---

[15] *Id*. at ¶¶ 13, 15-18.
[16] *Id*. at ¶ 16, 28.

4

### III.   LEGAL DISCUSSION

#### 1. *Sufficiency of Plaintiff's Retaliation Claim*

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that: (1) she invoked her right to FMLA-qualifying leave; (2) she suffered an adverse employment decision, and; (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 301-02 (3d Cir. 2012). Neither party disputes that Plaintiff invoked his right to FMLA leave for a qualified condition. Defendants argue that Plaintiff cannot establish that he was subjected to an adverse employment action that was causally connected to his invocation.

An "adverse employment action" is one that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Budhun v. Reading Hosp. and Medical Center*, 765 F.3d 245, 257 (3d Cir. 2014) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir.1997) (quotation marks omitted).[17]

To establish a causal link, a plaintiff must demonstrate "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing." *Budhun* at 258 (internal citations omitted). In determining a causal link, courts consider "the specific facts and circumstances encountered" in the case. *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n. 5 (3d Cir. 2000).

---

[17] Defendants argue that Plaintiff "mistakenly believes that the less restrictive standard for 'adverse employment action' promulgated in the Title VII context by the U.S. Supreme Court in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) applies here." ECF No. 6 at 17. The Third Circuit has yet to expressly adopt the *Burlington* standard for FMLA retaliation claims. However, several district courts have concluded that "*Burlington Northern* provides guidance in determining whether plaintiff was subject to an 'adverse employment action'" and have used the test to analyze FMLA retaliation claims. *See Grosso v. Fed. Exp. Corp.*, 467 F. Supp. 2d 449, 459 (E.D. Pa. 2006); *see also Foraker v. Apollo Group, Inc.,* 2006 WL 3390306, *2 (D.Ariz. Nov. 22, 2006); *Campbell v. Washington County Public Library,* 2006 WL 2612985, *6 (S.D. Ohio Sept. 8, 2006). Nevertheless, this Court will analyze the adverse employment action definition under *Budhun*, which establishes a more stringent test for Plaintiffs to meet.

Here, Defendants' denial of Plaintiff's light duty accommodation request, the fabricated allegations concerning his truthfulness and job performance, and continuing workplace antagonism[18] fit the definition of "adverse employment action" set forth in *Robinson* and *Budhun*. 120 F.3d at 1300; 765 F.3d at 258. In addition to temporal proximity,[19] Plaintiff adequately pleads a pattern of hostility, which escalated in the weeks following his return to work after leave as well as also in the months following his filing of an EEOC complaint.[20] Notably, Plaintiff never experienced the disciplinary action involved in this pattern of hostility until he invoked his FMLA rights.[21] The timing of the pattern in relation to Plaintiff's FMLA leave sufficiently alleges a causal connection.

### 2. *Sufficiency of Plaintiff's Interference Claim*

To facially state a claim of interference under the FMLA, a plaintiff must establish:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014). Defendant argues that Plaintiff's FMLA interference claim fails because Plaintiff did not establish (1) that he provided sufficient notice to Defendants that he was able to return to work; or (2) that the position he returned to was meaningfully different from the one he had prior to taking leave. At the outset, this Court accepts as true Plaintiff's assertion that he provided sufficient notice of his intent to return from medical leave.[22]

---

[18] ECF No. 1 at ¶¶ 11-18
[19] ECF No. 1 at ¶ 39.
[20] ECF No. 1 at ¶¶ 15-18, 21-22, 28, 39.
[21] ECF No. 1 at ¶ ¶ 18-19.
[22] ECF No. 1 at ¶ 9.

Defendant's interference claim appears to only concern Defendants' refusal to allow Plaintiff's return to work with lifting restrictions and light duty accommodations between August 29, 2019 and September 3, 2019. He was not reinstated until September 4, 2019 when he was able to fully return to his former position. The fact that Plaintiff's interference allegation involves merely four days of missed work does not defeat this claim, however, the claim, as presented, is outside the statute of limitations as discussed infra. See *Collison v. City of Phila.,* 430 F.3d 117, 119 (3d Cir. 2005)( "[a]n employee may not be required to take more FMLA leave than necessary to resolve the circumstance that precipitated the need for leave.").

### *3. Sufficiency of Plaintiff's Claims Against Individual Defendants*

Defendant contends that the claims against Defendants Caggiano and Castello cannot stand because Plaintiff has not alleged facts sufficient to impute individual FMLA liability. "[A]n individual is subject to FMLA liability when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest." *Haybarger v. Lawrence County Adult Probation and Parole*, 667 F.3d 408, 417 (3d Cir. 2012) (internal citations omitted). "Most courts look to the 'economic reality' of the employment situation" in examining whether the individual supervisor carried out the functions of an employer. *Id.* In discerning the economic reality, a court considers whether the individual "(1) had the power to hire and fire the employee[ ], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment record." *Id.* at 418 (citing *Herman v. RSR Sec. Servs*, 172 F.3d 132, 139 (2d Cir. 1999). Additionally, courts must consider "any relevant evidence" and "[n]o one of the four factors standing alone is dispositive." *Id.* (quoting *Herman* at 139). The *Haybarger* court found that, even if the defendant did not exercise control over every aspect of the

7

plaintiff's employment, he still exercised significant control over the conditions of her employment. *Id.* at 419; *see also Herman* at 139 (noting that an individual need not engage in "continuous monitoring" for liability to attach).

Plaintiff has sufficiently alleged that Defendant Caggiano had control over his conditions of employment, including Plaintiff's return to work timeline and the accommodations available to him, as well as allegations of dishonesty and poor performance and the disciplinary actions that followed those allegations.[23] With respect to Caggiano, Defendants' motion to dismiss is denied.

However, Plaintiff has not sufficiently pled Defendant Castello's supervisory authority over Plaintiff. The Complaint fails to draw substantial connection between Castello's authority or actions and the action taken against Plaintiff responsibility for the violation. Courts have dismissed individual FMLA claims for failure to plausibly allege that an individual defendant exercised supervisory authority. In *Christopherson v. Polyconcept North America, Inc.,* the court dismissed the plaintiff's case because the complaint was "devoid of allegations indicating that any of the Individual Defendants supervised and controlled her work schedule or employment conditions, determined her rate and method of payment, had the power to hire or fire her, or maintained employment records." 2021 WL 3113221 at *6 (M.D. Pa. 2021). Further, knowledge of another employee's violation of a plaintiff's FMLA rights, by itself, does not plausibly plead a claim of individual liability. *See Santee v. Lehigh Valley Health Network, Inc.*, 2013 WL 6697865 at *9-10 (E.D. Pa. 2013) (finding that plaintiff's information about employees, to whom she had complained about her treatment by her supervisor, did not plausibly allege that the employees met the standard for individual liability, even where the individual defendants "did not do anything to help resolve the situation").

---

[23] ECF No. 1 at ¶¶ 13-15, 17-19, 22.

As Defendants note, Castello's name is only referenced a few times in the Complaint, wherein Plaintiff avers that Castello knew about and/or condoned Defendants' treatment of the Plaintiff and overruled objections by Plaintiff's wife about his treatment.[24] The Complaint does not adequately define the individual Defendants' respective roles in the corporate hierarchy at Miller Edge, nor does it contain any specific facts to support the assertion that Defendant Castello controlled any aspect of Plaintiff's employment. Without this information, or any facts to allege that Castello is responsible for the FMLA violation, the only inference the Court may make with any confidence is that Castello knew about Defendant Caggiano's treatment of Plaintiff. Mere knowledge is inadequate to impute individual FMLA liability. *Santee*, 2013 WL 6697865 at *10. The suit with respect to Defendant Castello is dismissed.

  4. *Statute of Limitations*

The statute of limitations for FMLA violations is two years, unless an action is brought for a willful violation, which carries a three-year statutory period. 29 U.S.C. § 2617(c)(1)-(2). Defendants argue that both Plaintiff's FMLA interference claim and his FMLA retaliation claim fail because they were filed after the two-year period. Plaintiff asserts that the three-year statute applies, making it timely due to the willfulness of Defendant's actions.

The statute of limitations for a *willful* violation of the FMLA is three years from the date of the last event constituting the alleged violation for which the action is brought. 29 U.S.C. § 2617(c)(1)-(2). To allege a willful violation, a plaintiff must show that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. *McLaughlin v. Richland Shoe*, 486 U.S. 128, 133 (1988) (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125–30). In *Caucci v. Prison Health Servs., Inc.*, the court found the

---

[24] ECF No. 1 at ¶¶ 16, 28.

plaintiff's Amended Complaint, which alleged that "[d]efendant's conduct was 'willful, intentional and in flagrant disregard' [of the FMLA]," sufficient to plead willfulness. 153 F. Supp. 2d 605, 609 (E.D. Pa. 2001) (citing Fed.R.Civ.P. 9(b)). In denying a defendant's motion to dismiss, courts have found that allegations that an employer's actions "were done 'knowingly, intentionally and discriminatorily' and also in retaliation for exercising [] rights under the FMLA" successfully alleged a willful violation of the FMLA. *Ridner v. Salisbury Behav. Health, Inc.*, No. 3:11-CV-572, 2011 WL 5089806, at *4 (M.D. Pa. Sept. 28, 2011), report and recommendation adopted, No. 3:11-CV-00572, 2011 WL 5314187 (M.D. Pa. Oct. 25, 2011).

    A.  *FMLA Interference Claim (Count One)*

Even considering the three-year statute, the only interference alleged is with Plaintiff's return to work. (ECF No.1 ¶¶ 25-27.) Nothing contained within the pleadings alleges an interference with FMLA rights, past the denial of Plaintiff's return to work with light duty accommodations from August 29, 2019 to September 3, 2019. Because the instant lawsuit was not filed until September 9, 2022, Plaintiff's FMLA interference claim is time-barred unless he can establish either 1) a nexus between the original leave date and the later dates implicated in the Complaint; or 2) another allegation of interference that survives the three-year statute of limitations. Therefore, Defendants' motion regarding this claim will be granted.

    B.  *FMLA Retaliation Claim (Counts Two and Three)*

Plaintiff's Complaint alleges a string of specific, willful actions from at least September 2019 through the fall of 2020 by Defendant which were intended to discourage Plaintiff's exercise of his FMLA rights and to create a hostile work environment. Defendant Caggiano denied Plaintiff light duty accommodations despite awarding identical requests to other employees, repeatedly initiated discipline against him, and asserted allegations of dishonesty, inventory irregularity, and

poor performance.[25] One such attempted disciplinary action occurred on September 25, 2019 and others occurred in the fall of 2020. Notably, Plaintiff did not experience these allegations prior to requesting FMLA leave.[26] Further, Defendant only granted Plaintiff light duty accommodations once Caggiano no longer had control over the decision, demonstrating a plausible claim for willful retaliation and the availability of a job with lifting restrictions. Finally, after Plaintiff's wife complained to other Miller Edge employees about his treatment, Plaintiff's wife was demoted, given a pay cut, and eventually terminated on January 15, 2021.[27] Even taking the earliest date of FMLA retaliation clearly articulated, September 25, 2019, Plaintiff's claim was brought within the three-year statute of limitations for a willful violation and plausibly gives rise to an entitlement for relief.

## IV.   CONCLUSION

Defendants' Motion is **GRANTED** with respect to Count I (Family and Medical Leave Interference) regarding all named Defendants. Defendants' Motion is **GRANTED** with respect to Counts II and III (Family and Medical Leave Act Discrimination and Retaliation) with respect to Defendant Timothy Castello only. Pursuant to Federal Rule of Civil Procedure 12(b)(6), these claims are dismissed without prejudice. Defendants' Motion is **DENIED** with respect to Counts II and III (Family and Medical Leave Act Discrimination and Retaliation) with respect to Defendants Miller Edge and John Caggiano.

---

[25] ECF No. 1 at ¶¶ 15, 17-19.
[26] *Id.* at ¶ 21.
[27] *Id.* at ¶ 23.